Rossell , J.
— The first objection taken by the demurrants, is, that the plaintiff has not proved the Jersey Bank, a corporate body; without such proof, they say, the deed from the Jersey associates, to the Jersey Bank, is a nullity; that in ejectments brought by corporations, it is absolutely necessary to produce the act of incorporation; that the lessor of the plaintiff, being a purchaser at the Sheriff’s sale, of the lands of [*] a corporation, and coming in under their title, is bound by the same rules of law, and that no evidence inferior to the charter of incorporation, can be sufficient to entitle a recovery.
To this, it has been answered, by the counsel for the plaintiff, that the authorities relied on by the demurrants, were on motions for nonsuits; that many things might be taken advantage of on such motions, that would not prevail on demurrer.; that if the best evidence is not offered, and is objected to, the plaintiff may, by further search, produce the best evidence, but be is deprived of this privilege by the demurrer. For this reason, on demurrer, all facts of which there is any proof, are well proved, as well as all fair deductions from those facts.(a) In ejectment, a Sheriff’s deed is offered without an execution or judgmeut; the defendant demurs. The fact of the deed is admitted, and the plaintiff shall not be driven out of Court; for, if the objection had been taken, he could have produced the judgment and execution. That the deed from the Jersey associates, to the Jersey Bank, the possession under that deed, arid the several acts of the Le *768 gislature, recognizing the Jersey Bank, are proof sufficient of their incorporation. ’
This is certainly a new question in this State, and the Court, in making up their opinion, cannot have the benefit of former decisions. In looking into the English authorities, we find but very little that applies to the main question; the disputes respecting corporate bodies there, have generally been concerning their power of election, and the authority of their officers, &c. &c. I have, however, found a few authorities, which in principle, according to my apprehension, will apply to the present case. In Douglass’ Reports, 140, on motion for a new trial, Lord Mansfield declared, “that no objection to a witness should be received, that was not made at the trial; if it had then been [*] made, it might perhaps have been shown, there was no residue or a release.”
In the case before us, the proof is admitted ; the defendants demur; and the plaintiff is precluded from giving, by further search, that proof, the defendants now declare indispensable.' — In the case of the Mayor of Kingston, upon Hull v. Horner, in Cowper, 102, on motion for a new trial, it appeared the action was brought by the corporation, for port duties. Lord Mansfield said, “it was admitted that the title to their port duties once subsisted in the King : if so, it could not be denied he had an undoubted right to grant them to his subjects ; and although no grant was shewn at the trial, it hail been fairly left to the jury to presume a grant, notwithstanding it Vas within the time of legal memory ; they showing by their books, that they had for a great length of time, been in the practice of receiving such duties, which was a sufficient ground for the jury to find in their favor.” He lays it down “ as an established rule of law,” that though the record be not produced, nor any proof adduced, of its being lost, yet under circumstances, it may be left to the consideration of a jury, whether there is not sufficient ground to presume a charter. — “ In the present case, (he continues) taking it for granted, that such charter would have given the plaintiff a title, I think it was properly left to the jury, whether they would presume such grant;” and in the marginal note it is said, “a grant or charter from the Crown, which ought to be by matter of record, may, under circumstances, be presumed, though within the time of legal memory.” The rule for a new trial was, by the whole Court, discharged.. In 1 Strange, 309, Withers v. Warner; in error, on demurrer to the declaration, for a variance between London; and the City of London, it was argued that every city must be so, either by charter or prescription; and therefore, to say the Court will take notice of cities, is *769 to say [*] they will take notice of charters and prescriptions. The court, although at first strongly inclined to support the judgment, on consideration, were of opinion, that they njdst take notice that London was a city, it being mentioned to be so in several acts of Parliament, and they therefore held the error to be verified, and the judgment was reversed. In a case cited hy the counsel for the plaintiff, of the Dutch-West India Company v. Henifiques Van Moses, 1 Strange 612, it was adjudged, that if no name be given to a company or corporation, at their foundation, they may collect a name by reputation, by which they might sue or be sued; and the case of Queen’s College, was cited in support of that point.
From the foregoing cases, it is shewn, first, thát circumstances may occur, sufficient to warrant a jury in presuming a grant, though none be shown, nor any evidence concerning it- Secondly, that courts are' bound to take notice of cities, though confessedly founded by charter or prescription, merely because they are so called iii acts of Parliament. And lastly, that corporate bodies may acquire a name by reputation. The question then arises, whether the case before us, comes within any, dr all of the above rules of law, The plaintiff lias produced a deed from the Jersey associates, who were legally seized of the premises in question, to the Jersey Bank, for a valuable ednsideration. This deed has been propth-Iy ackiio'wlcdged arid recorded by an officer specially ilppointed fdr that puf-poso. They have also proved that the Jersey Bank was iii the possession of these premises from the year 180(5, to the year 1812 ; and that in several áets of the Legislature of this State, the Jersey Bank is recognized and described by that name. On this last point, it has been urged by the counsel for the defendant, that a mere name, in an act of the Legislature, does not imply an incorporation. In cases like the present, I think it does; words must be taken in their common [*] signification. The term hank, is universally understood; and where uncoupled with any other words of description, must, with us, always mean a corporate body, which loans money to others; more especially, when taken in connection with the title to “the act to tax bank stock.”
If then, from the above evidence, a jury would be warranted in presuming a corporation, this Court may fairly draw the same conclusion, although the corporation itself should have been the lessor of the plaintiff; much more so, when a purchaser at sheriff’s sale, is the lessor, (a) The State *770 claims a debt of the Jersey Bank; execution is issued, and a sale of their property is the consequence. In all this, the Jersey Bank is the adversary of the State; and I know not by what law the Bank could be compelled to give up their title papers. Shall then a purchaser at sheriff’s sale, be bound to produce evidence withheld by his adversary, and which he may not have the power of reducing to his own possession? I think not. And from all the circumstances of this case, I think a charter might justly be presumed; and if so, the plaintiff is not precluded from recovering possession, by the non-production of the charter of incorporation.
The second objection to the demurrants is, “that there is not any legal proof that the Treasurer made a return to the Chief Justice, as he was directed to do by the act; that this return was the only foundation on which a justice of this Court, could issue his warrant of sale; that the recital in the warrant, that such return was made is not evidence of the fact: — Notice should also (it is said) have been given to the Jersey Bank, of the amount of tax demanded, to give them an opportunity of appealing, if the assessed sum was too high.”
I am of opinion, that the recital in the warrant of the Chief Justice, that this return was made to him by the Treasurer, is good proof of the fact. Take the case [#] of paupers. The complaint of the overseers of the poor, that a poor person is likely to be, or has become chargeable to the township, is the foundation of the justice’s authority to remove him. Yet the recital in the order of removal, that such complaint was made, is ever considered (without controversy) as proof of the fact. The recital in a Sheriff’s deed, of the time of advertising, the day and hour of sale, is prima fade evidence of these circumstances. It is true, a purchaser at Sheriff’s sale, is bound on trial, to produce the execution and judgment, by the authority of which, such sale was made; not because there is any doubt of the existence of such execution, but both being matters of record, that it may be compared with the judgment, and see if it has been issued and recorded as the law directs; necessary duties, independent of the authority of the Sheriff, and in which he could have no participation or control. The true distinction, as I understand it, is this: — Wherever the returning officer has full and complete official cognizance of the fact he returns, his recital is prima fade evidence of the existence of such fact, and it lies on the party injured, to prove the falsity of the return.
But when the substance in issue, depends on some other matter, of which, from its nature or situation, he cannot necessarily be informed, as not appertaining to his office,, the *771 recital of such matter will not be taken as proof. The Chief Justice having, in his warrant of sale, recited that a fact of which he was necessarily and officially informed, and on which his power to issue such warrant, entirely depended, was actually performed; full faith and credit are to be given to his uncontradicted declaration. With respect to the necessity of the Treasurer’s giving notice to the Jersey Bank, of the sum assessed, I think it did not exist. An act altogether nugatory, and not required by the law; there can be no necessity of performing. That this notice was not required by the law, is manifest; [*] that it could not have been of any benefit to the Bank, will be as manifest on reflection. The justices of this Court, to one of whom, the Treasurer was to return the defaulting Bank, had no authority to reduce or increase the amount of tax so returned, they were ministerially to issue a warrant of sale, on application of the Treasurer, for the sum returned, and here their authority was at an end.
The Commissioners of Appeal, in cases of taxation, chosen by the people at their town-meetings, are to convene on the second Tuesday in November, annually, to discharge the duties of their office; and on that day only, can they lawfully assemble for that purpose, unless perhaps by adjournment. On neglect of any of the banks to pay into the Treasury the amount of one half of one per cent on their capital actually paid in, for thirty days after the first day of January, the Treasurer was to return them to one of the justices of this Court: — No appeal then could be had under this law; and as it did not direct the Treasurer to give the notice, as it could not possibly, under the circumstances of the case, be of the least benefit to the parties concerned, I cannot perceive any necessity for it. If it is contrary to usual practice in cases of taxation, tlie only answer that can be be given is, that so is the law. If the Treasurer has arbitrarily assessed a greater sum than the law allows, the Bank is not without a remedy.
A third objection is taken, that the Sheriff’s deed was made to the State, when it ought to have been made to the Treasurer, who was the highest bidder: — That no power was given to the Treasurer by the act, to purchase for the State; and by so doing, he exceeded his authority, which he was bound to pursue strictly: — That no delivery was made to the State, and that for these reasons, the deed was void; — to this it may he answered, that the act directed the Treasurer to attend the sale of the premises in question, and to bid to the amount of the tax assessed; and if he became [*] the purchaser, to take measures to secure the state,.'— *772 He attended the sale; became the purchaser at the sum specified. How then was he to secure the State, but by taking a deed in its name, for the premises purchased with its own funds? Taking a deed in his own-.name, would not have secured the'State, and would have been at least as direct a departure from the words of the act as the mode he has pui’sued. The Treasurer, throughput the whole transaction, was nothing more or less in Legislative contemplation, than the agent of the State. As such, he attended flip sale, and become the purchaser; and as such, directed the Sherijf to make the deed in the name of the State, to secure, as he was directed* the tax assessed; and lean see no other mpde by jvhich he could have fulfilled that provision of the rlaw with safety to himself. If the Treasurer may be considered as the agent of'the State* it will' not be denied, that ' a delivery of the lleed ’to him, as agent, is as amply sufficient as if such delivery had been made to his principal: — But it is said, the State is riot bound by this deed; nor have'" they accepted it. Tliépegislatiiré hayé been tlificeiri session since this sale wras made;, arid' we have not heard apartide of objection to the proceedings of the Treasurer: and that they have accepted the deed, is in proof on the records of this Court; how else has the State become the lessor of the plaintiff? But it is said this is a private law, taking away the property of individuals, Without trial or appeal, and must therefore, be strictly construed. The distinction between private and public laws, is well defined in 1 Blac. Com. 86. “ The statute of the 13 of Eliz. C. 10, to prevent spiritual perspns from making leases for a longer term than twenty-one years, is a public law, being a rule prescribed to the whole body of spiritual persons in the nation. But an act to enable the Bishop of p. to make a lease to A- B. is a private act, concerning only the parties. The rict'in question is entitled,' “An act tp tax bank Stock,” and enumerates all the banks therf ip the. State. : [*] How then can it be called á private act? It is true, that statutes giving a new power of jurisdiction, jriust, in genera], be strictly pursued. : But there is fi stjll higher rule: — That all acts made pro bono publico, are'to have 'a liberal construction; and highly penal statutes are often taken j*y intendment, 1 Strange, 253 arid 6. This being a public act, for the support of Government, must receive that construction which will best carry the clear intentions of the Legislature into effect. This intention was, by express words, to secure the payment of the tax due from the Bank fo the State; arid the Treasurer appears to have pursued the most direct means in his power to effectuate that intention.
An exception has lastly, been taken to the form of the *773 deed itself, by one of the counsel for the demurrants — “ That in the premises, the estate in the Jersey Bank in the lands in question, at the time of passing the law, is granted, and the habendum, adds, at any time afterwards. As the granting and conveying part sells all the rights held on the 2(1 of November, the habendum cannot enlarge the grant, and gs there was no lien on the lands on the 2d of November, the deed is void.” In Cowper, 60p, Lord Mansfield says, “the rules laid down in respect to the construction of deeds, are founded in law, reason, and common sense; that they shall operate according to the intentions of the parties, if by law they may; if not in one form, yet in another, to effectuate that intention.” In 2 Blac. Com. 302, it is laid down, “that if the words of a deed clearly and legally declared the parties’ meaning, it is sufficient.” And again, “the office of the habendum is to determine what estate or interest is granted by the deed; though this is somelipies performed in the premises, in which case, the habendum may lessen, enlarge, explain or qualify; but not totally contradict, or be repugnant to the estate granted in the preniises.” The habendum in the Sheriff’s [*] deed, grants the estate that the Jersey Bank held on the 2d of November, and at any time after-wards.” This, though it may enlarge the grant in the premises, is not repugnant to it. The Sheriff’s authority to sell, commenced at the time the execution was put into his hands. In consequnee of this power, he sells all the right of the defendants at the time the lien took effect; his power extended no further; to convey such right, was clearly his intention, as well as the expectation of the grantee; and, in my opinion, this intention is well expressed in the instrument itself.
Several other points were taken by some pf the counsel for the demurrants; but as they were not strongly urged, I do not think it necessary to notice them particularly.
As this is a cause of considerable magnitude, and has excited much feeling in this State, I lament that circumstances have deprived me of that assistance which I might have reasonably expected, from the opinions of my brethren. But from the best consideration of this subject I have been able to give it, from laborious investigation, I am of opinion, that the plaintiff have judgment, (a) Judgment for plaintiff.*

 Seo 3 Johns. Cases, 159. 1 Johns. Rep. 241. 5 lb. 29. 4Cran. 219.

 See 5 Halst, 273.

 This judgment was affirmed by the Court of Appeals in Jan. 1816.

 Mahlon Dickinson, Esquire, having been appointed Third Justice of this Court, in vacation, between September and November Terms, in the place of Justice 1’ennington, and not having heard the argument jjave no opinion.